**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RYAN BALDWIN, | : | CIVIL CASE NO. |
|     Petitioner, | : | 3:03-CV-980 (JCH) |
| | : | |
| v. | : | CRIMINAL CASE NO. |
| | : | 3:00-CR-44 (JCH) |
| | | |
| UNITED STATES OF AMERICA, | : | JULY 1, 2015 |
|     Respondent. | : | |

**RULING RE: MOTION TO VACATE, SET ASIDE, OR
CORRECT SENTENCE (CIV. DOC. NO. 1)**

## I.     INTRODUCTION

Petitioner Ryan Baldwin ("Baldwin") filed this Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. No. 1) seeking to have the court either set aside his sentence, conduct a new sentencing hearing, or, resentence him in accordance with Booker, based on allegations that he was deprived of his Fifth and Sixth Amendment rights.  See Pet'r's Am. Mot. Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Crim. Doc. No. 667) ("Mot. to Vacate").  Specifically, Baldwin claims that: (1) his counsel was ineffective in advising him to plead guilty; (2) his counsel was ineffective in advising him as to his appeal rights and ineffective in not filing a direct appeal and an Anders brief; and (3) the court improperly imposed a sentence enhancement.  See id.  The government opposes Baldwin's Motion to Vacate, asserting that Baldwin's counsel was effective at all times and that Booker cannot apply retroactively in collateral proceedings.  See Gov't's Resp. to Order to Show Cause (Crim. Doc. No. 578) ("Gov't's Resp. to 2003 OTSC"); Gov't's Resp. to Order to Show Cause (Crim. Doc. No. 696) ("Gov't's Resp. to 2010 OTSC").

1

## II.     BACKGROUND

Baldwin pled guilty to conspiracy to possess with intent to distribute 50 grams or more of cocaine base.  See Plea Agreement (Crim. Doc. No. 704 Ex. A) ("Plea Agreement").  The parties did not agree on a guidelines calculation in the Plea Agreement.  Rather, the Plea Agreement reserved Baldwin's right to challenge at sentencing the quantity of drugs attributable to him and his role in the offense.  Id. at 3.  Baldwin also reserved his right to appeal his sentence.  Id.

The court subsequently calculated that Baldwin's base offense level was 38, based in part on the quantity of drugs involved in the conspiracy.  Sentencing Tr. 19 (Crim. Doc. No. 573 Ex. D) ("Sentencing").  The court then enhanced the base level by four to reflect Baldwin's role as a leader in the conspiracy, resulting in an adjusted offense level of 42.  Id.  However, the court also reduced the offense level by three after finding that Baldwin accepted responsibility for his offense.  Id. at 19-20.  Baldwin's total offense level was 39.  Id. at 20.

The court next determined that Baldwin fell within Criminal History Category III.  Id. at 68.  The court reached this conclusion after departing downward from an original determination that Baldwin fell within Criminal History Category IV.  See id. at 65.  This downward departure represented the court's opinion that Baldwin's criminal history overstated the seriousness of his past crimes.  Id. at 67-68.

Baldwin received a sentence of 324 months' imprisonment and a five-year term of supervised release, which was the shortest term of imprisonment the court could have imposed without an additional downward departure.[1]  Id.

---

[1] Baldwin's sentence was subsequently reduced three times.  First, it was reduced from 324 months to 263 months.  See Order Reducing Sentence (Doc. No. 681).  It was further reduced from 263

2

**III.     STANDARD**

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. U.S., 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). Relief under section 2255 of title 28 of the United States Code is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. U.S., 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks omitted). Further, in a section 2255 motion, the petitioner bears the burden of proving he is entitled to relief by a preponderance of the evidence. See Skaftouros v. U.S., 667 F.3d 144, 158 (2d Cir. 2011).

In deciding a section 2255 motion, the court must hold a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013). A hearing is not required "where the allegations are vague, conclusory, or palpably incredible." Id. (internal quotation marks omitted).

---

months to 235 months. See Order Reducing Sentence (Doc. No. 734). Finally, it was reduced from 235 months to 188 months. See Order Reducing Sentence (Doc. No. 757).

**IV.    DISCUSSION**

Baldwin asserts that: (1) his counsel was ineffective in advising him to plead guilty; (2) his counsel was ineffective in advising him as to his appeal rights and ineffective in not filing a direct appeal and an Anders brief; and (3) the court improperly imposed a sentence enhancement.  See Mot. to Vacate ¶ 15.  The government responds that Baldwin's counsel was effective at all times and that Booker cannot apply retroactively in collateral proceedings.  See Gov't's Resp. to 2003 OTSC; Gov't's Resp. to 2010 OTSC.

      A.    Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result."  Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  At the first step, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88.  The Second Circuit has described the burden as "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Harrington, 689 F.3d at 129 (citations and internal quotation marks omitted).  "The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'"  Id. at 129-30 (quoting Harrington v. Richter, 562 U.S. 86, 88 (2011)).

To show the requisite prejudice at the second step, a petitioner must show "a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

        1.      Ineffective Assistance Regarding Pleading Guilty

Baldwin asserts that his counsel was ineffective in advising him to plead guilty in multiple respects.

First, Baldwin claims his counsel was ineffective in advising him "to enter into a plea agreement that purported to preserve Mr. Baldwin's right to challenge drug quantity at sentencing, only to abandon any arguments regarding drug quantity at the time of sentencing." See Mot. to Vacate at 5. Such conduct, Baldwin claims, "rendered his plea unknowing and involuntary." Id.

This claim fails to satisfy the first Strickland prong. "As a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there was no tactical justification for the course taken." Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006) (internal quotation marks and alterations omitted). Further, the Second Circuit "will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside." Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (internal quotation marks omitted). That is exactly what Baldwin's counsel did: he decided not to challenge the drug quantity ("a potentially fruitful course of conduct") to avoid possibly squandering the acceptance of responsibility reduction ("a significant potential downside"). See

5

Gov't's Resp. to 2003 OTSC Ex. 1, Ex. 2; see also Francis v. United States, No. 02 CV 0468(RJD), 2010 WL 1260158, at *6 (E.D.N.Y. Mar. 31, 2010) (holding that counsel's tactical decision not to challenge drug quantity was not objectively unreasonable).

Baldwin also claims that his counsel was ineffective in misleading him as to the reasons why counsel thought it inadvisable to contest the drug quantity. See Pet'r's Supplemental Mem. in Supp. of Am. Mot. to Vacate, Set Aside, or Correct Sentence 2 (Crim. Doc. No. 738) ("Supplemental Mem. in Supp."). Baldwin asserts that his counsel advised him against challenging the drug quantity because of other findings that the court had adopted during the sentencing of one of Baldwin's co-conspirators. See id. He argues that this advice was incomplete because his counsel did not inform him of statements the court made suggesting that it had not reached a final determination as to the drug quantity in Baldwin's case until it was too late to contest the quantity at sentencing. See id.; id. Ex. A 2-3.

While Baldwin is correct that his counsel's apprehensions over contesting the drug quantity were based on the court's findings in the other case, the record is unclear as to Baldwin's contention that his counsel did not fully inform him of the court's views in a timely manner. On the one hand, the records of Baldwin's counsel indicate that Baldwin was timely informed of the court's position. In the same letter where Baldwin's counsel informed him that he told the court that they would not be contesting the drug quantity, he also told Baldwin that the court "was careful to point out that she doesn't want the impression to be that she has a closed mind on these issues, and that she wasn't [sic] heard what we might say." Gov't's Resp. to 2003 OTSC Ex. 2. Baldwin's counsel also told Baldwin in that letter that, "[i]f you have second thoughts about this

6

strategy, you need to call me immediately." Id. Baldwin's counsel sent this letter to Baldwin via Federal Express on May 21, 2002, over a week before Baldwin's sentencing. Id. Baldwin, on the other hand, appears to claim that he was not informed of the court's statements until after his sentencing occurred. See Supplemental Mem. in Supp. at 3. The record does not contain any direct evidence proving on what date Baldwin received the letter his counsel mailed on May 21, 2002. Accordingly, the court will grant Baldwin's request for an evidentiary hearing to determine whether the advice of Baldwin's counsel was timely given. Specifically, the hearing will seek to determine when Baldwin received the letter his counsel sent him and when he was apprised of the statements the court made that relate to counsel's decision not to contest the drug quantity.[2]

Lastly, Baldwin also appears to suggest that his counsel was ineffective insofar as counsel promised Baldwin that he would challenge the drug quantity at sentencing and later reneged on that promise. See Mot. to Vacate at 5; Baldwin Aff. at 3 (Crim. Doc. No. 583) ("Baldwin Affidavit") ("[counsel] mislead [sic] me [to] withdraw my objections to the drug amounts and role in the offense. Which but for the 'promise' of being able to challenge each, I would not have pled guilty."). However, there is no evidence that Baldwin's counsel promised him that he would challenge drug quantity at sentencing. All that was promised was what was contained in the plea agreement – that Baldwin would have the right to challenge drug quantity at sentencing. See Plea Agreement at 3. Further, Baldwin confirmed at his plea hearing that he understood the plea agreement to promise only the right to contest drug quantity at sentencing, and that

---

[2] The court notes the possibility that Baldwin still cannot satisfy the first Strickland prong, even if he can prove that he never received the letters, or received them after it was too late to act on their advice.

no other promises had been made to him. Guilty Plea Tr. 16-18 (Crim. Doc. No. 573 Ex. B) ("Guilty Plea Hearing"). Thus, Baldwin's counsel cannot possibly have been ineffective for reneging on a promise that he never made. This claim does not survive the first Strickland prong.

      2.  Ineffective Assistance Regarding Decision Not to Appeal

Baldwin also claims that his counsel was ineffective for failing to consult with him adequately regarding his right to appeal his sentence, and for failing to file a direct appeal and an Anders brief when Baldwin indicated that he wanted to appeal. See Mot. to Vacate at 5.

The court addresses first Baldwin's claim that his counsel failed to file an appeal despite Baldwin's request for one, as that claim, if proven, will subsume the claim that his counsel failed to consult with him adequately regarding his appeal rights. As for the first Strickland prong, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). As for the second Strickland prong, in such cases the "denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right . . . demands a presumption of prejudice." Id. at 483.

Thus, whether Baldwin has a valid ineffective assistance of counsel claim on this ground and whether he deserves an opportunity to appeal his sentence turns on whether he told his counsel to file an appeal. The record is unclear on this point. Baldwin claims he requested that his attorney file an appeal on two occasions, first immediately following the conclusion of his sentencing, and again a few days later. See Pet'r's Supplemental Decl. 3-4 (Crim. Doc. No. 738 Ex. A) ("Baldwin Supplemental

Declaration"). The records of Baldwin's counsel indicate that he and Baldwin communicated numerous times regarding the prospect of appealing, but Baldwin never definitively told him to appeal. For example, on May 30, 2002, counsel wrote a letter to Baldwin in which he articulated reasons why he did not think an appeal was advisable, but ultimately concluded: "Although, in my view, there is little reason to appeal, it is your decision and I need you to indicate to me one way or the other whether you intend to file an appeal." See Gov't's Resp. to 2003 OTSC Ex. 3. On June 6, 2002, counsel again wrote a letter to Baldwin in which he wrote: "As we have discussed, I understand that you do not wish to file an appeal from this sentence, but wish to pursue other possible avenues of cooperation with the government. If, for some reason, my understanding is incorrect, you need to call me immediately upon receipt of this letter." See Gov't's Resp. to 2003 OTSC Ex. 4. Baldwin and his counsel's accounts of their discussions regarding an appeal also differ in other respects. Baldwin indicates that he asked his counsel to appeal during an in-person conversation on the date of his sentencing, May 29, 2002. See Baldwin Supplemental Decl. at 3. However, his counsel's records indicate that they discussed his appealing over the phone on May 30, 2002. See Gov't's Resp. to 2003 OTSC Ex. 3. His counsel's records also contain no direct reference to the phone call that Baldwin claims to have made to his counsel a few days after the sentencing. See Baldwin Supplemental Decl. at 4.

Given these inconsistencies, the court must determine whether an evidentiary hearing is necessary. Although the organizational clarity and internal consistency of Baldwin's counsel's notes and counsel's repeated requests that Baldwin notify him immediately if he desired to pursue an appeal are compelling pieces of evidence that

9

Baldwin did not directly request an appeal, the court cannot conclude that Baldwin's allegations are "vague, conclusory, or palpably incredible." Therefore, the court will grant Baldwin's request for an evidentiary hearing to determine whether he explicitly asked his counsel to appeal.

The court can quickly dispense with Baldwin's other two claims relating to his counsel's advice regarding an appeal. First, Baldwin claims that his counsel was ineffective in failing to consult with him adequately as to his appeal rights. If counsel ignored Baldwin's request for an appeal – the scenario discussed above – this claim would be subsumed by the claim that counsel was ineffective for failing to file an appeal. However:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.

Flores-Ortega, 528 U.S. at 478. The record strongly supports the conclusion that Baldwin's counsel consulted with Baldwin within the meaning of the Supreme Court's definition of "consult." On May 30, 2002, Baldwin's counsel sent Baldwin a letter discussing the advantages and disadvantages of filing an appeal. See Gov't's Resp. to 2003 OTSC Ex. 3. Further, in that letter Baldwin's counsel referenced a telephone call between he and Baldwin in which they, according to the letter, discussed the same

10

advantages and disadvantages memorialized in the letter.  See id.  If Baldwin's counsel did, in fact, consult with Baldwin, then counsel's performance would be unreasonable only if he failed to follow Baldwin's express instructions regarding an appeal.  However, for purposes of this specific claim, the court is assuming that Baldwin did not expressly instruct his counsel to file an appeal.  Thus, if Baldwin's counsel did consult with him, and if Baldwin did not expressly instruct him to file an appeal, then Baldwin's counsel could not have acted unreasonably.  However, because the court is already holding an evidentiary hearing to resolve other questions, the court will grant Baldwin's request for an evidentiary hearing on this point out of an abundance of caution.  Specifically, the court will seek to determine whether Baldwin's counsel "consulted" with Baldwin, as the Supreme Court defined "consult" in Flores-Ortega.

Lastly, the court rejects Baldwin's claim that his counsel was required to file an Anders brief.  In Anders v. State of Cal., 386 U.S. 738, 744 (1967), the Supreme Court held that, "if counsel finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw."  Counsel is also required to submit "a brief referring to anything in the record that might arguably support the appeal."  Id.  However, the records of Baldwin's counsel indicate that counsel did not believe that Baldwin only had frivolous appeals claims, nor do they indicate that counsel desired to withdraw.  Rather, counsel believed that there did exist one non-frivolous ground for appeal.  See Gov't's Resp. to 2003 OTSC Ex. 3. Counsel merely believed that Baldwin should not pursue the appeal.  Id.  Further, counsel indicated on two occasions that, if Baldwin wanted to pursue the appeal, that he would assist him.  See id.; Gov't's Resp. to 2003 OTSC Ex. 4.  Thus, there is nothing to

suggest that an Anders brief was called for.  Accordingly, Baldwin's claim that his counsel was ineffective for failing to file an Anders brief must fail.

  B.  Improper Sentence Enhancement

Lastly, Baldwin argues that the court violated his Fifth and Sixth Amendment rights by enhancing his sentence based on facts that were neither found beyond a reasonable doubt by a jury, nor admitted by Baldwin.  See Mot. to Vacate at 6.  Baldwin asks the court to apply the Supreme Court's holding in United States v. Booker, 543 U.S. 220, 244 (2005), to the facts of his case.  See Mot. to Vacate at 6.  Specifically, he seeks a resentencing in accordance with Booker.  Id.

However, Booker cannot provide a basis for relief for Baldwin because Baldwin's conviction was final before Booker was decided.  "Booker is not retroactive, i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued." Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005).  Given the clear directive from the Second Circuit that Booker cannot be applied retroactively in cases such as Baldwin's, the court rejects Baldwin's argument to the contrary.[3]

---

[3] Even if Booker were to apply retroactively, it would provide no relief for Baldwin.  In Booker, the Supreme Court reaffirmed and applied its earlier holdings in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004) to the Federal Sentencing Guidelines.  See Booker, 543 U.S. at 244.  In Apprendi, the Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.  In Blakely, the Court clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely, 542 U.S. at 303 (emphasis in the original).  However, in this case Baldwin pleaded guilty to a crime that carried a maximum statutory sentence of life in prison.  See Plea Agreement at 1-2.  Thus, because the sentence the court imposed on Baldwin – 324 months – did not exceed the statutory maximum of life in prison, and because the court imposed that sentence based on facts that Baldwin admitted, the sentence does not contravene Booker.
  Further weakening Baldwin's Booker claim is the fact that he waived his Apprendi rights in the Plea Agreement.  See Plea Agreement at 3.  Baldwin also confirmed at the plea hearing that he understood and waived those rights.  See Guilty Plea Hearing at 26-27.  Baldwin now claims that

12

## IV.    CONCLUSION

For the foregoing reasons, the defendant's Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. No. 1) is **GRANTED** in part, and **DENIED** in part.  The Motion is denied as to the defendant's claim the counsel was constitutionally ineffective for failing to challenge the drug quantity.  The Motion is granted as to the defendant's request for an evidentiary hearing to determine whether the defendant's counsel timely informed him of comments the court made with regard to counsel's decision not to contest the drug quantity.  The Motion is granted as to the defendant's request for an evidentiary hearing to determine whether the defendant directly requested that his counsel file an appeal.  The Motion is granted as to the defendant's request for an evidentiary hearing to determine whether counsel adequately consulted with the defendant with regard to his appeal rights.  The Motion is denied as to the defendant's claim that his counsel was ineffective for failing to file an Anders brief.  The Motion is also denied as to the defendant's claim that the court improperly enhanced his sentence.

---

this waiver was invalid because "it did not articulate his right to have aggravating sentencing conduct under the sentencing guidelines proved beyond a reasonable doubt." Mem. in Supp. at 20.  The record supports Baldwin's claim that, although he was informed that under Apprendi he had a right to have a jury find the existence of certain aggravating factors, he was not informed that the jury's finding must be beyond a reasonable doubt.  See Plea Agreement at 26-27.  However, earlier in the plea hearing, the court did inform Baldwin that he had a right to a trial by jury in which the jury would have to find him guilty beyond a reasonable doubt.  See id. at 10-12.  Although the Second Circuit has stated that "an otherwise valid waiver might be deemed unenforceable as against an Apprendi claim if a defendant can establish that he was unaware of his Apprendi rights at the time he enter into his plea agreement," U.S. v. Morgan, 386 F.3d 376, 381 n. 3 (2d Cir. 2004), the court concludes that Baldwin was sufficiently aware of his Apprendi rights, including the right to have the jury determine the drug quantity beyond a reasonable doubt.  Further, if Baldwin sought to attack the validity of his Apprendi waiver, he should have done so within the guise of an ineffective assistance of counsel claim.  See U.S. v. Riggi, 649 F.3d 143, 150 (2d Cir. 2011).

**SO ORDERED.**

Dated at New Haven, Connecticut, this 1st day of July, 2015.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge